[Civil No. 835.   Filed March 26, 1904.]

[76 Pac. 614.]

P. C. ROBERTSON, Probate Judge and Ex-officio Trustee of North Globe Townsite, Defendant and Appellant, v. SARAH S. MARTIN, Plaintiff and Appellee.

1. PUBLIC LANDS — TOWNSITES — TRUSTEE—OCCUPANTS—CLAIMANTS— TOWN LOTS—PURCHASE PRICE—REV. STATS. U. S., SEC. 2387 (U. S. COMP. STATS. 1901, P. 1457), CITED—REV. STATS. ARIZ. 1901, PARS. 4075, 4076, 4077, 4079, 4080, 4085, 4093, 4094, CONSTRUED.—Section 2387, *supra*, provides that the judge of the county court may enter at the proper land-office land occupied as a townsite of an unincorporated town, in trust for the "occupants" thereof, leaving the execution of the trust to such regulation as may be prescribed by the legislature of the state or territory. Paragraphs 4075, 4076, 4077, 4079, 4080, 4085, 4093, and 4094, which provide the method of executing the trust, and require the payment by the "claimant" to the trustee of the purchase price of five dollars per lot before he is entitled to a deed, do not distinguish between "occupants" and "claimants." Payment by both actual occupants and those who merely claim the right to possession is requisite under the statute. An occupant, to be entitled to his deed, must be a claimant, file his statement, and pay to the trustee the purchase price.

APPEAL from a judgment of the District Court of the Second Judicial District in and for the County of Gila. Fletcher M. Doan, Judge. Reversed.

The facts are stated in the opinion.

Peter T. Robertson, for Appellant.

J. S. Sniffen, and A. R. Edwards, for Appellee.

DAVIS, J.—The appellant, as the probate judge of Gila County, Arizona, duly entered at the proper land-office, and on September 9, 1901, received a patent for, the North Globe townsite, in trust for the use and benefit of the occupants thereof, in accordance with the act of Congress relating to the entry and patenting of townsites on public lands of the United States. The appellee, Sarah S. Martin, for some time prior thereto had been in the actual possession of about three and one fourth acres of land included within the area of

said townsite, and was one of the occupants for whose use
and benefit the entry thereof was made. She was the owner
of the undivided four-fifths interest in the possessory right
to said tract of land. By the survey and plat of the town-
site which was subsequently made, this tract, which was in
a compact form, was subdivided into forty-six lots. The
appellee made application to appellant, as the trustee of said
townsite, for a deed to the undivided four-fifths interest in
the aforesaid parcel of land, and in connection therewith made
a tender of the sum of twenty-eight dollars, which she claimed
to be her *pro rata* of the actual cost and expense incident to
the securing of the patent, together with a further sum for
the cost of making and acknowledging the deed. The trustee
contended that he was required to receive from the appellee
a purchase price at the rate of five dollars per lot, and refused
to execute a deed, except upon payment by her of the sum of
one hundred and eighty-four dollars, being four fifths of five
dollars for each of the forty-six lots into which said parcel
of land had been subdivided. This amount was subsequently
paid by the appellee under protest, whereupon the trustee
executed to her a deed for the lots referred to. She then
commenced this action in the district court of Gila County
to recover from the trustee the sum of one hundred and fifty-
six dollars as an overpayment which was exacted from her
without authority of law. On the trial of the cause in the
court below there was no controversy as to the material facts,
and it was stipulated "that the only question to be deter-
mined by the court is one of law; that the contention on be-
half of the plaintiff is that the defendant was without author-
ity of law in demanding of and from the plaintiff five dollars
per lot as the purchase price thereof before making and de-
livering to the plaintiff her deed to the property mentioned
in the complaint; that the defendant contends that he acted
in accordance with law in making such demand, and that he
had no authority of law for making and delivering to plaintiff
a deed without first requiring of and from plaintiff five dol-
lars per lot." Upon the single proposition thus involved,
the court held in favor of the appellee, and rendered judgment
against the trustee, from which the latter now appeals.

The question which the record presents for our considera-
tion is the same which was before the lower court, viz.: Did

the law warrant the trustee in requiring payment by the appellee of a purchase price at the rate of five dollars per lot for land of which she was an occupant at the entry of the townsite? The act of Congress under which this townsite was entered provides as follows: "Whenever any portion of the public lands have been or may be settled upon and occupied as a townsite, not subject to entry under the agricultural pre-emption laws, it is lawful, in case such town be incorporated, for the corporate authorities thereof, and, if not incorporated, for the judge of the county court for the county in which such town is situated, to enter at the proper land-office, and at the minimum price, the land so settled and occupied in trust for the several use and benefit of the occupants thereof, according to their respective interests; the execution of which trust, as to the disposal of the lots in such town, and the proceeds of the sales thereof, to be conducted under such regulations as may be prescribed by the legislative authority of the state or territory in which the same may be situated." Rev. Stats. U. S., sec. 2387 [U. S. Comp. Stats. 1901, p. 1457]. It is further provided by section 2391 [U. S. Comp. Stats. 1901, p. 1459] that "any act of the trustees not made in conformity to the regulations alluded to in section 2387 shall be void."

The supreme court of the United States, in *Ashby* v. *Hall*, 119 U. S. 526, 7 Sup. Ct. 308, 30 L. Ed. 469, discussing the provisions of this act, said: "As thus seen, the act required the entry of land settled upon and occupied to be in trust 'for the several use and benefit of the occupants thereof according to their respective interests.' . . . The power vested in the legislature of the territory, in the execution of the trust upon which the entry was made, was confined to regulations for the disposal of the lots and the proceeds of the sales. These regulations might extend to provisions for the ascertainment of the nature and extent of the occupancy of different claimants of lots, and the execution and delivery to those found to be occupants in good faith of some official recognition of title in the nature of a conveyance. But they could not authorize any diminution of the rights of the occupants, when the extent of their occupancy was established." The supreme court of Colorado, in the case of *City of Denver* v. *Kent*, 1 Colo. 336, referring to the same act, said: "The power of the cor-

porate authorities is limited to the act of entry, and, when the
land is entered, the party or parties so entering it become
invested with a trust, the execution of which is under the
sole and exclusive direction of the local legislature.   Until
the legislature points out the method and prescribes the rules
of procedure, the trustees are wholly incapable of conveying
the legal title to the beneficiaries of the trust, or of disposing
of the land for any purpose or to any person. . . . The trust
is manifestly a double one,—the first, a trust for the inhabit-
ants of the town and as individuals; the other, a trust for
them collectively and as a community. . . . This whole matter
is left to the local legislature.   To it belongs the creation of
the tribunal before whom individual rights shall be defended.
It prescribes the kind of evidence necessary to make good
a claim of title.   It prescribes what kind of disposition shall
be made of the money arising from the sale of lots, and, in
fact, has full and plenary power over the whole subject-matter
of the trust.   And, to strengthen this power conferred by
Congress, the law declares any act done by a trustee, inconsist-
ent with or in violation of the rules and regulations prescribed
by the legislature for the execution of the trust, shall be void
and of no effect.   Congress seems to have contented itself with
declaring simply who might enter the land and denominating
the *cestui que trust*.   All else it hands over to the territorial
legislature, which is better fitted, on account of its proximity
to the subject-matter of the trust, to supervise and direct its
details.''   Our own supreme court, in the case of *Singer Manu-
facturing Company* v. *Tillman*, 3 Ariz. 122, 21 Pac. 818, has
held that ''an 'occupant,' within the meaning of the townsite
law of Congress, is one who is a settler or resident of the
town, and in the *bona fide*, actual possession of the lot at the
time the entry is made.''

The statutes enacted by the territory of Arizona in aid of
the trust, and to carry the same into effect, include the fol-
lowing provisions, contained in the Revised Statutes of 1901:

''Par. 4075.   Within three months after the entry of the
townsite [the trustee, if it has not already been done, shall
cause the townsite] to be surveyed into blocks, lots, streets
and alleys and a plat thereof made, which shall conform as
near as may be to the existing rights and claims of the occu-
pants.   The plat shall be submitted to and approved by the

board of supervisors of the county in which the townsite is situated and then recorded in the office of its county recorder, and thereafter the streets and alleys designated in said plat shall remain dedicated to the public use forever.

"Par. 4076. Immediately after the survey and plat has been made, or if a survey and plat has been made previous to the entry, then immediately after the entry of the land, the trustees shall cause a notice to be published in all the newspapers published in the town, or if none is published in the town, then by posting such notice in five of the most public places in the town for sixty days successively, giving notice of the entry of the land and requiring every claimant of any lot to file a statement of his claim in the office of the trustee on or before a specified day, which day shall be ninety days from the first publication.

"Par. 4077. Such statement shall be in writing, signed and sworn to by the claimant, or in case of his absence from the county, then by his agent or attorney and shall be recorded at length in a well-bound book to be provided and kept for that purpose by the trustee; the statement shall specify the grounds of the claim, particularly describe the lots claimed, the date and name, as near as may be, of the first actual occupant, what improvements have been made thereon, and at the time of making such statement the lots are actually possessed and occupied by the claimant or that the right to such possession and occupation is in him, if the same is occupied by another, and with such statement shall pay to the trustee the purchase price and fees hereinafter fixed and the trustee must not receive such statement unless the price and fees accompany it."

"Par. 4079. The number of lots which any one claimant shall be entitled to pre-empt under this act shall not exceed in the aggregate twelve thousand and five hundred square feet and such additional lots not exceeding three thousand one hundred and twenty-five feet to the lot, upon which the claimant shall have substantial improvements of the value of not less than one hundred dollars. When any claimant shall make application to enter more than four lots, he shall specially designate such lots in the statement to be filed by him as aforesaid and particularly describe the nature and value of the improvements on each of said additional lots and

shall at the time of making the proof required in section six of this act and in addition thereto, prove to the satisfaction of the trustee, by the affidavit of one or more reliable witnesses, the facts entitling him to enter such additional lots.

"Par. 4080. Immediately after the expiration of the ninety days for filing statements, the trustee shall proceed to hear' the proofs (where no adverse claims have been filed) as near as can be in the order in which the claims have been filed, of such claimants as shall appear and offer to make their proof, and if the proof complies with the provisions of this act the trustee shall enter a decision to that effect and shall execute a good and sufficient deed to such lots to the claimant."

"Par. 4085. Each claimant or contestant shall, with his statement or contest, pay the trustee the sum of five dollars for each lot claimed not exceeding three thousand one hundred and twenty-five square feet per lot, as the purchase price therefor, and such money shall be refunded to such claimant by the trustee if it shall be finally determined that the party is not entitled to a' deed, first deducting any costs or fees that may be due from such party."

"Par. 4093. If the money paid to the trustee for the purchase of lots shall be insufficient to pay the money required to be raised and paid out by him, he shall sell at public auction so many of the remaining lots, the title to which still remains in the trustee, and which no claim or contest is pending, as is necessary to raise the amount required; first giving such notice of the sale as the sheriff gives upon the sale of real estate on execution: Provided, that the lots shall be sold separately and no lot shall be sold for less than ten dollars; the lots not to exceed three thousand one hundred and twenty-five square feet. If sufficient money shall not be raised in this way, the trustee shall make an assessment and levy a tax upon all the lots, the title to which does not remain in the trustee, according to the value of the lots and the improvements thereon, and such assessment and tax shall be a lien upon the lots so assessed until paid, and may be recovered by the trustee by an action in any court having jurisdiction of the amount of such tax against the party to whom the lot is assessed.

"Par. 4094. The lots undisposed of as aforesaid, the title to which remains in the trustee, shall be subject to entry and purchase from the trustee at the rate of ten dollars per lot."

It is the theory of counsel for the appellee that the legislature, in the foregoing provisions, has recognized and distinguished three separate classes of individuals,—namely, occupants, claimants, and contestants,—and that an occupant is one who owned and occupied a lot or parcel of land in the townsite at the time of the entry; a claimant, one who makes a claim to a lot after the issuance of the patent and the survey into blocks, lots, streets, and alleys, but who has never been an occupant of the townsite; a contestant, one who asserts an interest adverse to either occupant or claimant, and files his statement of contest with the trustee. Under this view, it is contended that paragraphs 4076, 4077, 4079, 4080, and 4085, *supra,* do not apply to occupants, but have application only to claimants and contestants. We do not believe that the provisions of the territorial law fairly justify this classification, or the construction which results therefrom. Considering that the trust was for "the use and benefit of the occupants," and that these provisions were enacted solely to regulate the execution of the trust, "as to the disposal of the lots in such town, and the proceeds of the sales thereof," we think it plain that the paragraphs referred to were intended to apply primarily to occupants. In our view, the law contemplates that an "occupant," to be entitled to a deed, must become a "claimant," and as such file his statement and pay to the trustee the purchase price, as required by paragraphs 4077 and 4085. This is but a reasonable regulation, in connection with the vesting of the legal title in the occupant. It is also consistent with other legislation of Congress relating to the disposal of townsite lots. Rev. Stats. U. S., sec. 2382 [U. S. Comp. Stats. 1901, p. 1455]. If paragraphs 4077 and 4085 do not apply to occupants, then there is no statutory regulation under which the trustee can convey lots to occupants, and consequently no way by which they could obtain title to their holdings; for, as said in *City of Denver* v. *Kent, supra:* "Until the legislature points out the method and prescribes the rules of procedure, the trustees are wholly incapable of conveying the legal title to the beneficiaries of the trust, or of disposing of the land for any purpose or to any person." It certainly cannot be that the legislature has provided for the disposal of lots to all save the occupants. On the contrary, we think it has fully dealt with every feature

of the townsite trust, and clearly expressed a method whereby occupants can make proof of their rights and obtain their deeds.

The act of Congress refers to "lots." Counsel for appellant well suggests the question: How can there be lots, and how can lots be sold, until they are surveyed, measured, and platted? Obviously, there must of necessity be a survey of the entire townsite. The extent of each occupant's holding must be determined. Paragraph 4075 provides for such a survey, and contains the restriction that the same "shall conform as near as may be to the existing rights and claims of the occupants." It would be beyond the power of the legislature, as held in *Ashby* v. *Hall, supra,* to "authorize any diminution of the rights of the occupants, when the extent of their occupancy was established." But the legislature has not said that the occupant's possessions shall be changed in size or shape. It has not declared that a lot shall be square, oblong, triangular, or round. It has simply prescribed that the area of a lot shall not exceed three thousand one hundred and twenty-five square feet. The subdivision of the appellee's tract into lots on the townsite plat did not diminish her holdings nor interfere with any right which she had. The trustee's action in that regard, and also in requiring the payment by the appellee at the rate of five dollars per lot, for the forty-six lots, was strictly in accordance with the statute.

It follows that the judgment must be reversed. The cause will be remanded, with directions that the district court enter a judgment in favor of the defendant.

Kent, C. J., and Sloan, J., concur.